Bradley T. Cave, P.C.
Joanna R. Vilos
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
Cheyenne, WY 82001
Telephone:  (307) 778-4200

*COUNSEL FOR DEFENDANT*
*SHEFFIELD, OLSON & McQUEEN, INC.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| STEVEN DUFFY and NORTHERN ROCKIES NEURO-SPINE, PC, a Montana corporation, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 12-CV-197-SWS |
| SHEFFIELD, OLSON & McQUEEN, INC., a Minnesota corporation; and FARMERS COOPERATIVE ASSOCIATION OF GILLETTE, WY, a Wyoming nonprofit corporation, | ) ) ) ) ) | **DEFENDANT SHEFFIELD OLSON & McQUEEN INC.'S RESPONSE BRIEF** |
| Defendants. | ) ) | |
| FARMERS COOPERATIVE ASSOCIATION OF GILLETTE, WYOMING, a Wyoming nonprofit corporation, | ) ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| BARDON INSURANCE GROUP, INC., an Arizona corporation; and AMERICAN NATIONAL INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

**CORPORATE DISCLOSURE STATEMENT**

Sheffield, Olson & McQueen, Inc. (SOMI) is wholly owned by EBSO, LLC, a Minnesota limited liability company.

## T<small>ABLE OF</small> C<small>ONTENTS</small>

T<small>ABLE OF</small> A<small>UTHORITIES</small> ............................................................................................ iii

S<small>TATEMENT OF</small> J<small>URISDICTION</small> ................................................................................... 1

S<small>TATEMENT OF</small> I<small>SSUES</small> ............................................................................................... 1

S<small>TATEMENT OF THE</small> C<small>ASE</small> ........................................................................................ 1

S<small>TATEMENT OF</small> R<small>ELEVANT</small> F<small>ACTS</small> ........................................................................... 2

I.    The Plan and Determination of Benefits .......................................................... 3
      A.    Relevant Plan Terms ............................................................................. 3
      B.    The Medical Procedures at Issue ........................................................... 4
      C.    Duffy's Claim for Benefits .................................................................... 4
      D.    SOMI allowed, not one, but two appeals under the Plan, which resulted in a total of four independent medical reviews by highly qualified physicians, all of whom determined the procedures were not medically necessary. ..................................... 7

S<small>UMMARY OF</small> A<small>RGUMENT</small> .......................................................................................... 10

A<small>RGUMENT</small> ............................................................................................................... 11

I.    SOMI is a third party administrator with no responsibility for funding the benefits, and, therefore, Duffy has no basis for asserting a 29 U.S.C. § 1132(a)(1)(b) claim for benefits against SOMI. ......................................................................................................... 11

II.   Standard of Review ......................................................................................... 12
      A.    Arbitrary and capricious review governs this appeal. ........................... 12
      B.    SOMI does not have the requisite financial interest to give rise to a dual role conflict of interest. ................................................................................ 15

III.  SOMI's denial of Duffy's claims was a result of a reasoned and principled process and was based on substantial evidence. ...................................................................... 17
      A.    SOMI reasonably relied on the opinions of the independent physicians. ............. 18
            1.    SOMI properly requested three independent medical reviews, and credited the independent medical reviewers over Dr. Schneider's opinion. .......... 20
      B.    The three SOMI-retained medical reviews properly applied the definition of medical necessity to determine coverage. ............................................ 23
      C.    SOMI's review did not create a moving target or cherry pick the reasons for denying coverage. ............................................................................... 25

IV.   Duffy's arguments about prejudgment interest and legal fees are premature. ................. 26

V.      Duffy's alternative claim for breach of fiduciary duty must be dismissed, because Duffy has a claim for benefits available to him under 29 U.S.C. § 1132(a)(1)(b) and SOMI is not a fiduciary. ................................................................................................................... 27

VI.     SOMI's clarification of the record. ................................................................................... 29
        A.      Pre-authorization ................................................................................................... 29
        B.      Miscellaneous rebuttals .......................................................................................... 30

VII.    Conclusion ............................................................................................................................ 32

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Benson v. Prudential Fin., Inc.*,
   No. CIV-07-587-JB/ACT, 2007 WL 4334026 (D.N.M. Aug. 17, 2007) ...............................28

*Black & Decker Disability Plan v. Nord*,
   538 U.S. 822 (2003)..................................................................................................................21

*Bruch v. Firestone Tire & Rubber Co.*,
   828 F.2d 134 (3d Cir. 1987), *aff'd in part*, *rev'd in part*, 489 U.S. 101 (1989) .....................16

*Buckhardt v. Albertson's, Inc.*,
   221 F. App'x 730 (10th Cir. 2007) .........................................................................................21

*Caldwell v. Life Ins. Co. of N. Am.*,
   287 F.3d 1276 (10th Cir. 2002) ..............................................................................................18

*Carberry v. Metro. Life Ins. Co.*,
   No. 09-cv-02512-DME-BNB, 2011 WL 2887842 (D. Colo. July 19, 2011) ..........................20

*Chalker v. Raytheon Co.*,
   291 F. App'x 138 (10th Cir. Aug. 19, 2008) ..........................................................................21

*Chambers v. Family Health Plan Corp.*,
   100 F.3d 818 (10th Cir. 1996) ................................................................................................13

*Conkright v. Frommert*,
   559 U.S. 506, 130 S. Ct. 1640 (2010)................................................................................12, 13

*Corry v. Liberty Life Assur. Co. of Boston*,
   499 F.3d 389 (5th Cir. 2007) ..................................................................................................20

*Davis v. Unum Life Ins. Co. of Am.*,
   444 F.3d 569 (7th Cir.), *cert. denied*, 127 S. Ct. 234 (2006)............................................19, 20

*Dixon v. Massanari*,
   270 F.3d 1171 (7th Cir. 2001) ................................................................................................22

*Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*,
    663 F.3d 1124 (10th Cir. 2011) ...................................................................16, 21

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)................................................................12, 13, 15, 17

*Frommert v. Conkright*,
    328 F. Supp.2d 420 (W.D.N.Y. 2004) .................................................................13

*Graham v. Hartford Life & Acc. Ins. Co.*,
    589 F.3d 1345 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3356 (2010) ....................................18

*Hall v. UNUM Life Ins. Co.*,
    300 F.3d 1197 (10th Cir. 2002) .................................................................2

*Huynh v. Liberty Life Assur. Co. of Boston*,
    No. CIV-10-276-JCH/RHS, 2011 WL 2340800 (D.N.M. Mar. 23, 2011).............................28

*Jones v. Am. Airlines, Inc.*,
    57 F. Supp.2d 1224 (D. Wyo. 1999)..................................................................27

*Kimber v. Thiokol Corp.*,
    196 F.3d 1092 (10th Cir. 1999) ...........................................................17, 18, 32

*Klover v. Antero Healthplans*,
    64 F. Supp.2d 1003 (D. Colo. 1999)..............................................................11, 28

*Kunz v. Colorado Ass'n of Soil Conservation Districts Med. Benefits Plan*,
    840 F. Supp. 811 (D. Colo. 1994)..................................................................11

*Lefler v. United HealthCare of Utah, Inc.*,
    72 Fed. App'x 818 (10th Cir. Aug. 14, 2003)..........................................................27

*Lunt v. Metro. Life Ins. Co.*,
    No. 2:05-cv-784-TC, 2007 WL 1964514 (D. Utah July 2, 2007) ....................................14, 15

*McGee v. Equicor-Equitable HCA Corp.*,
    953 F.2d 1192 (10th Cir. 1992) .................................................................17

*McGraw v. Prudential Ins. Co. of Am.*,
    137 F.3d 1253 (10th Cir. 1998) ...........................................................13, 14, 16

*Mein v. Pool Co. Disabled Int'l Emp.Long Term Disability Benefit Plan,*
   989 F. Supp. 1337 (D. Colo. 1998)...................................................................28

*Meraou v. Williams Co. Long Term Disability Plan,*
   221 F. App'x 696 (10th Cir. 2007) .................................................................21

*Metro. Life Ins. Co. v. Glenn,*
   554 U.S. 105 (2008)...........................................................................12, 15, 16

*Moore v. Berg Enterprises, Inc.,*
   201 F.3d 448, 1999 WL 1063823 (Nov. 23, 1999)..........................................27

*Nance v. Sun Life Assur. Co. of Canada,*
   294 F.3d 1263 (10th Cir. 2002) ....................................................13, 14, 15

*Sandoval v. Aetna Life & Cas. Ins. Co.,*
   967 F.2d 377 (10th Cir. 1992) .................................................................18, 21

*Streeter v. Metro. Life Ins.,*
   No. 2:04-CV-1190-TS, 2006 WL 2944876 (D. Utah Oct. 13, 2006)................14, 15

*Swearingen v. Honeywell, Inc.,*
   189 F. Supp.2d 1189 (D. Kan. 2002) ...............................................................28

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996)..........................................................................................27

*Vega v. National Life Ins. Serv., Inc.,*
   188 F.3d 287 (5th Cir. 1999) ...........................................................................18

*Walter v. Int'l Ass'n of Machinists Pension Fund,*
   949 F.2d 310 (10th Cir. 1991) .........................................................................12

*Williams v. Metro. Life Ins. Co.,*
   459 F. App'x 719 (10th Cir. 2012) ..................................................20, 21, 22

*Woolsey v. Marion Laboratories, Inc.,*
   934 F.2d 1452 (10th Cir. 1991) .......................................................................17

## FEDERAL STATUTES

28 U.S.C. § 1331.......................................................................................................1

29 U.S.C. § 1001 ...................................................................................................................1

29 U.S.C. § 1002(21) ...........................................................................................................28

29 U.S.C. § 1102(a) .............................................................................................................28

29 U.S.C. § 1132(a)(1)(b) ............................................................................................ passim

29 U.S.C. § 1132(a)(3)....................................................................................................27, 28

29 U.S.C. § 1132(e)(1).............................................................................................................1

**STATEMENT OF JURISDICTION**

Petitioner Steven Duffy's claims arise exclusively under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, because the Plan at issue is an employee welfare benefit plan governed by ERISA.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**STATEMENT OF ISSUES**

Whether SOMI's decision to deny coverage, in reliance on four independent medical reviews performed by highly-qualified physicians, was arbitrary and capricious.

**STATEMENT OF THE CASE**

Dr. Schneider of Northern Rockies Neuro-Spine, P.C. (NRNS) performed lumbar and cervical spine surgeries on Petitioner, Mr. Steven Duffy (Duffy) in May 2011.  Duffy submitted claims for coverage of the medical expenses resulting from the surgery to SOMI, the third party administrator for Farmer's Cooperative Association's (FCA) Plan.  SOMI originally paid $39,717.92 to Dr. Schneider to cover the cost of the procedures.  SOMI then submitted the remaining medical expenses to FCA's stop loss carrier, Bardon Insurance Group and American National Insurance Company (Bardon/American).  Bardon/American denied coverage of the remaining medical expenses because the procedures were determined not to be medically necessary.  Upon Bardon/American's decision, SOMI requested an independent medical review, in which a board certified orthopedic surgeon also concluded the procedures were not medically necessary.  Accordingly, SOMI denied coverage of the procedures because the FCA Plan does not cover procedures that are not medically necessary.  Dr. Schneider and Duffy appealed

1

SOMI's determination of medical necessity and denial of coverage, whereupon SOMI requested two additional independent medical reviews, both of which determined the procedures were not medically necessary.  Thus, SOMI upheld its initial determination that the Plan did not cover the procedures.

Duffy and Dr. Schneider filed a complaint on August 31, 2012, to which SOMI filed a motion to dismiss on October 2, 2012.  Duffy and Dr. Schneider amended their complaint on October 24, 2012 and filed their response in opposition to the motion to dismiss on October 30, 2012.  SOMI filed its answer on November 13, 2012.  FCA filed its answer on November 7, 2012, and filed a third-party complaint against Bardon/American on November 21, 2012.  Bardon/American filed their answers to the third-party complaint on January 4, 2013. SOMI filed the administrative record on January 10, 2013 and supplemented the record on January 31, 2013.

### STATEMENT OF RELEVANT FACTS

In its review of SOMI's claim determination, the Court is "limited to the administrative record: the materials compiled by the administrator in the course of making [its] decision."  *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197, 1201 (10th Cir. 2002).  It is undisputed that the administrative record is complete. SOMI has based the following summary of the background facts on the evidence in the administrative record.

## I.     The Plan and Determination of Benefits

### A.     Relevant Plan Terms

The Plan provides medical benefits for eligible FCA employees.  (*See* Plan Document, SOM 000183-281 SD.)  SOMI administers the medical benefits claims pursuant to an administrative services agreement with FCA but has no financial responsibility for the payment of benefits.  (SOM 000192, 203, 206, 217 & 219 SD.)  The Plan Document conveys discretionary authority to SOMI as "a Contract Administrator for the purposes of evaluating Claims reimbursement under the Plan" (SOM 000203 SD; *see also* SOM 000206SD (defining a contract administrator as "[t]he organization providing administrative services to the Employer in connection with the operation of the Plan and performing such other functions, including processing and payment of claims as may be delegated to it.")).  FCA funds the Plan from its general assets, and is responsible for the financing and administration of the Plan assets.  (SOM 000219 SD.)

Benefits coverage is based on the Plan terms, including whether or not a procedure is medically necessary.  (SOM 000204, 229, & 275 SD.)  The Plan defines services and supplies as medically necessary if they:

> (a) are appropriate and consistent with the diagnosis or treatment of the Illness, and (b) are customarily and reasonably recognized as appropriate throughout the Physician's profession, and (c) could not have been omitted without adversely affecting the patient's condition or the quality of medical care rendered, and (d) are not solely for the convenience of a Covered Person, Physician, Hospital or other provider.

(SOM 000229 SD.)  In order to determine medical necessity, the Plan must have sufficient

information regarding the participant's diagnosis and treatment.  (SOM 000202 SD.)  Thus, the

Contract Administrator "may secure independent medical or other advice and require such other

evidence as it deems necessary."  (SOM 000204, 275, & 277 SD.)  Further, if the Contract

Administrator mistakenly pays benefits or pays benefits in excess of the maximum amount

required under the Plan, the Plan provides a right to recovery: the Plan "shall have the right to

recover all such excess amounts from any persons, insurance companies, or other payees."

(SOM 000205, 276 SD.)

> **B.**     **The Medical Procedures at Issue**

Dr. Schneider performed an anterior lumbar discectomy of L5-S1, anterior lumbar

reconstruction of L5-S1 and an anterior cervical discectomy, cervical plating and reconstruction

of C5-6 and C6-7 ("the procedures") on Duffy on May 9, 2011.  (SOM 000008-13, & 31 SD.) As

discussed in further detail below, SOMI did not pre-authorize these procedures.

> **C.**     **Duffy's Claim for Benefits**

Following the May 9, 2011 procedures, Dr. Schneider and other providers sent invoices

to SOMI totaling $129,152.62.  Between May 26 and June 16, 2011, SOMI paid $39,717.92 to

Dr. Schneider for the procedures.  (SOM 000288 SD.)  These payments were $9,717.92 over

FCA's deductible for stop-loss coverage with its stop-loss carrier, Bardon/American, and left a

remainder of $89,434.70 unpaid.  According to its usual practice, SOMI paid—out of FCA's

funds—the full amount of the invoices it received until it exceeded the stop-loss deductible,

rather than paying only a portion of an invoice to reach the exact amount of the stop-loss

deductible.  Because the invoice amounts exceeded FCA's deductible, SOMI forwarded Duffy's

medical records to Bardon/American with a request to Bardon/American to reimburse FCA for

the amount paid over the deductible and to pay the remainder of the claim.  (SOM 000037 SD.)

    Upon receipt of SOMI's request, Bardon/American requested the first of four

independent medical reviews (Review 1) from Medical Review Institute of America (MRIoA).

(SOM 000031 SD.)  Review 1 was completed by a board certified neurologist, who had been

practicing since 1993, and was a member of the American Association of Neurological

Surgeons, the American Medical Association, and a Fellow of the American College of

Surgeons.  (SOM 000034 SD.)  The reviewer examined the Plan language defining medical

necessity, case notes following the surgery, the HICF billings, operative reports, encounter notes,

and the lumbar MRI.  (SOM 000031 SD.)  The reviewer consulted ten different peer reviewed

articles on treatment of low back pain and fusions.  (SOM 000033-34 SD.)  The reviewer

concluded that the procedures were not medically necessary for the following reasons: (1) the

MRI and the physical examination performed by Dr. Schneider were not congruent because the

examination demonstrated *left* side weakness, but the MRI demonstrated degenerative disease

and severe *right* sided foraminal stenosis (emphasis added); (2) the literature supported a

discogram to help determine which level was producing Duffy's low back pain, but no

discogram was performed; and (3) there was no evidence of radioculopathy.  (SOM 000032-33

SD.)

    Pursuant to MRIoA's determination that the procedures were not medically necessary,

Bardon/American issued an explanation of non-payment on June 28, 2011, stating that the

operations were not medically necessary.  (SOM 000036 SD.)  Bardon/American explained that

it would reconsider its denial of coverage if Dr. Schneider, through SOMI, provided more

documentation supporting medical necessity.  (*Id.*)

On June 29, 2011, after SOMI received Bardon/American's denial of payment, it sent a

letter to Dr. Schneider conveying Bardon/American's findings and including a copy of Review 1.

(*Id.*)  SOMI conveyed its ability to file an appeal with Bardon/American to Dr. Schneider, and

offered Dr. Schneider the opportunity to have a phone consultation directly with MRIoA to

explain the medical necessity of the procedures.  (*Id.*)  SOMI also asked Dr. Schneider to provide

additional documentation supporting his medical necessity determination in order to aid SOMI's

appeal of Bardon/American's decision.  (*Id.*)

On July 18, 2011, in response to SOMI's correspondence and requests, Dr. Schneider

declined to engage in a phone consultation or to provide additional documentation.  Instead, he

copied Duffy on a letter threatening litigation and recommending that Duffy contact a lawyer to

bring claims for bad faith in the administration of benefits and inappropriate practice of medicine

by a nonmedical association.  (SOM 000039-40 SD.)  On July 19, 2011, Bardon/American

upheld its initial determination that the procedures were not medically necessary.  (SOM 000042

SD.)

Following Bardon/American's denial and Dr. Schneider's refusal to provide

documentation, on July 22, 2011, under the Plan's terms permitting the use of independent

medical reviews to determine coverage, SOMI requested an independent medical review of its

own (Review 2) from AllMed Health Care Management.  (SOM 000043-45 SD.)  Review 2 was

independent of Bardon/American's first medical review, and it too determined the procedures were not medically necessary.  (*Id.*)  The reviewer was a board certified orthopedic surgeon, who reviewed the billing forms, operative reports, MRI reports, clinical notes, and the Plan language defining medical necessity. (*Id.*)  During this review, the reviewer consulted eleven peer reviewed articles about fusion, disectomies, and lumbar spinal stenosis. (SOM 000044-45 SD.) The reviewer determined, independent of Review 1, that the procedures were not medically necessary for the following reasons: (1) the medical reports showed no instability of the spine in either the cervical or the lumbosacral region; (2) all of the tests in the lumbosacral region were normal, except for some loss of motion; (3) there was no evidence of instability, myelopathy, a fracture, a tumor, spondylolisthesis, or marked decreasing function; and (4) the lumbosacral spine had previously been relieved by massage. (SOM 000044 SD.)

In October 2011, based on determinations of medical necessity by AllMed and MRIoA, and pursuant to the Plan's rights of recovery, SOMI issued a corrected explanation of benefits and requested the $39,717.92 back from NRNS, and denied coverage for the remaining $89,434.70.  (SOM 000290-291 & 000389-398B SD.)

**D.    SOMI allowed, not one, but two appeals under the Plan, which resulted in a total of four independent medical reviews by highly qualified physicians, all of whom determined the procedures were not medically necessary.**

On March 6, 2012, after SOMI denied the remainder of the payments and demanded the already-paid $39,717.92 from Dr. Schneider, Dr. Schneider's office initiated an appeal, in which they finally provided additional documentation and Dr. Schneider's explanation of medical necessity (dated February 17, 2012).  (SOM 000051 - 53 SD.)  Based on this new information,

on March 13, 2012, SOMI requested its second independent medical review from MRIoA

(Review 3).[1] (SOM 000092-99 SD.)  The reviewer was a board certified neurologist who had

practiced since 2001, and was a member of the American Association of Neurological Surgeons

and the Congress of Neurological Surgeons. (SOM 000098 SD.)  The reviewer looked at billing

records, surgeon fee charts, the appeal letter, Dr. Schneider's letter dated February 17, 2012, visit

notes, a letter from Kim Maycock (chiropractor), operative procedure reports, MRI reports and

Review 1. (SOM 000092 SD.)  The reviewer considered six peer reviewed articles in support of

his/her decision that the procedure was not medically necessary.  (SOM 000097-98 SD.)  The

reviewer determined that the procedures were not medically necessary for the following reasons:

(1) the medical records did not demonstrate significant radicular findings; (2) there was a lack of

conservative care; and (3) the medical records did not demonstrate identification of all pain

generators in the cervical and lumbar spine prior to surgery. (SOM 000097 SD.)

   After considering Review 3, SOMI determined for a second time that Duffy's surgery

was not medically necessary and there was no coverage within the terms of the Plan for the

procedures.  SOMI communicated its determination to Dr. Schneider in a letter dated March 22,

2012, and included a copy of Review 3. (SOM 000100-102 SD.)

   On May 17, 2012, Duffy appealed SOMI's determination of coverage.  His appeal

focused heavily on lack of conservative care—only one of the reasons the procedure was deemed

not medically necessary.  (*See* SOM 000106-110 SD.) To combat the finding of lack of

---

[1] This was SOMI's second independent medical review, but including Bardon/American's initial review, it was the third review in total.

conservative care, Duffy provided medical documentation of his pain and treatment of pain for years prior to the surgery.[2] (*See* SOM 000111-169 SD.)  But the appeal did not address or rebut the multitude of other reasons the procedures were deemed not medically necessary.  (SOM 000109 SD.)  Nonetheless, in response to this appeal, SOMI set out for a third time to determine whether the procedure was medically necessary.[3]

On May 24, 2012, SOMI requested its final review of Duffy's procedures from MRIoA (Review 4).  (SOM 000170-178 SD.)  The reviewer was a board certified orthopedic surgeon who had practiced since 1993, completed a fellowship in spinal surgical disorders, and was a member of the American Academy of Orthopedic Surgeons and the North American Spine Society.  (SOM 000177 SD.)  The reviewer supported his decision with nine peer reviewed articles.  (SOM 000176-177 SD.)  The reviewer evaluated the Plan's definition of medical necessity, along with a multitude of other documents.[4]  (SOM 000170-171 SD.)  The reviewer determined that the procedures were not medically necessary for the following reasons: (1) the MRI was not consistent with the physical findings because the MRI showed severe nerve root canal stenosis on the *right*, but the physical findings showed decreased strength in the *left* biceps

---

[2] SOMI does not dispute that Duffy was in pain prior to surgery, or that he received conservative care.  It is clear from the independent medical reviews that the reviewers understood that Duffy was in pain, but clearly thought a discogram should have been performed and/or pain generators identified prior to surgery.  (SOM 000033, 95 & 97 SD).

[3] This was SOMI's third independent review, but the fourth review total including Bardon/American's review.

[4] These documents include the HICF billings; 2/22/12 billing letter; 2/17/12 physician letter; 11/21/11 letter of medical necessity; post-operative and operative reports; office visit notes; Cervical and Lumbar MRI reports; 5/17/12 appeal; 4/18/12 authorization for medical information; patient information; 3/22/93 initial review concerning chiropractic care; 1/27/93 supplemental information form; 10/19/92 release from work or school; chiropractic exams; chiropractic flow; chiropractic notes; subjective, objective, assessment, plan notes, 10/28/91 initial report; cervical x-rays; 8/25/95 disability note; diagnosis list; authorization request; prescription order; appointment scheduling form; physician request; and prior reviews (6/24/11 & 3/13/12).

and triceps; (2) the patient did not demonstrate significant radiculopathy; (3) the MRI did not

demonstrate significant instability; and (4) Dr. Schneider's letter from February 17, 2012 stated

the surgery was necessary because the preoperative image showed discogenic deterioration at

C5-6 and C6-7, as well as LF-S1 on the lower spine; however, the image showed disc influence

at C6-7 and on the right, not the left.  (SOM 000174 SD.)

Based on Review 4, SOMI determined the Plan provisions did not allow coverage of

Duffy's procedures.  (SOM 000179 SD.)  SOMI notified Duffy that its original claim

determination was upheld.  (*Id.*)  This was a final determination, which allowed Duffy the right

to bring a civil action under ERISA.

### SUMMARY OF ARGUMENT

First, Duffy has no basis for asserting a claim for benefits against SOMI as a third party

administrator with no responsibility for the funding of benefits.  Thus, Duffy's claim for benefits

against SOMI must be dismissed.  In addition, Duffy's alternative claim for breach of fiduciary

duty must be dismissed because SOMI is not a fiduciary under the Plan and Duffy has a claim

for benefits available to him.

In the alternative, SOMI's determination to deny coverage was not arbitrary and

capricious.  The Plan language gives SOMI the authority to consult independent medical

reviewers in determining medical necessity.  Throughout the course of two appeals, four board

certified surgeons determined the procedures Dr. Schneider performed on Duffy were not

medically necessary.  By reviewing Duffy's file, consulting peer reviewed articles, and using

their expertise to determine that the procedures were not appropriate in response to the diagnosis

and not customarily and reasonably recognized as appropriate, the independent medical reviews provided a "reasonable basis" for SOMI's determination that the procedures were not medically necessary.  SOMI is entitled to give weight to independent physician-reviewers' opinions and properly denied coverage based on these expert opinions.

## ARGUMENT

**I.     SOMI is a third party administrator with no responsibility for funding the benefits, and, therefore, Duffy has no basis for asserting a 29 U.S.C. § 1132(a)(1)(b) claim for benefits against SOMI.**

Under ERISA, Duffy as a participant in the Plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  This remedial section of ERISA allows Duffy to recover benefits from the entity responsible for funding those benefits. Plan benefits are provided directly from FCA's assets.  (SOM 000219 SD.)  Therefore, if Duffy were to prevail on his 29 U.S.C. § 1132(a)(1)(B) benefits claim, the Plan, not SOMI, would be responsible for the payment of any benefits due to Duffy under the Plan.

SOMI is the third party administrator or contract administrator responsible for determining claim eligibility under the Plan, and notifying FCA of the amount required to pay eligible claims. (SOM 000217, 203, & 226 SD.)  SOMI is not responsible for funding the payment of benefits under the Plan. Thus, ERISA does not permit the recovery of unpaid benefits from a third party administrator such as SOMI.  29 U.S.C. § 1132(a)(1)(B); *Klover v. Antero Healthplans*, 64 F. Supp.2d 1003, 1011 (D. Colo. 1999); *Kunz v. Colorado Ass'n of Soil*

11

*Conservation Districts Med. Benefits Plan*, 840 F. Supp. 811, 812-13 (D. Colo. 1994); *see also*

*Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 315 (10th Cir. 1991).

Accordingly, any 29 U.S.C. § 1132(a)(1)(B) claim for benefits against SOMI must be dismissed.

## II.   Standard of Review

### A.      Arbitrary and capricious review governs this appeal.

The Court should apply the arbitrary and capricious standard of review to this case because SOMI has the discretion to determine claims for benefits under the Plan language, and Duffy has not disputed that the proper standard of review for this case is arbitrary and capricious.[5]  (*See* Pet'r's. Br., 1, 15.)

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the U.S. Supreme Court held that courts must review ERISA claims determinations under the arbitrary and capricious standard of review if the ERISA plan document grants discretionary authority to the administrator.  The Supreme Court has repeatedly emphasized the importance of the arbitrary and capricious standard of review in ERISA litigation.  In *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008), the Court refused to "overturn *Firestone* by adopting a rule that in practice could bring about near universal review by judges *de novo*—that is, without deference—of the lion's share of ERISA plan claims denials."  In *Conkright v. Frommert*, 559 U.S. 506, 130 S. Ct. 1640 (2010), the Supreme Court refused to "strip a plan administrator of deference," and

---

[5] Although Duffy has no basis for asserting a 29 U.S.C. § 1132(a)(1)(B) claim against SOMI, it nonetheless will address Duffy's benefits claim on the merits.

emphatically recognized that the arbitrary and capricious standard of review is an important

component of ERISA benefits litigation.  The Supreme Court held that:

> Deference promotes efficiency by encouraging resolution of
> benefits disputes through internal administrative proceedings rather
> than costly litigation. It also promotes predictability, as an
> employer can rely on the expertise of the plan administrator rather
> than worry about unexpected and inaccurate plan interpretations
> that might result from *de novo* judicial review.   Moreover,
> *Firestone* deference serves the interest of uniformity, helping to
> avoid a patchwork of different interpretations of a plan, like the
> one here, that covers employees in different jurisdictions . . . .

*Id*. at 1649.

The Supreme Court has not required any particular language in an ERISA plan document

to convey discretionary authority. Instead, the focus is on the clear meaning of the plan terms.

For example in *Conkright*, the Supreme Court stated that "under *Firestone* and the terms of the

Plan, the Plan Administrator here would normally be entitled to deference when interpreting the

Plan," and noted the district court's observation that "the Plan grants the Plan Administrator

'broad discretion in making decisions relative to the Plan.'"  *Id*. at 1646 (quoting *Frommert v.*

*Conkright*, 328 F. Supp.2d 420, 430-31 (W.D.N.Y. 2004)).

The Tenth Circuit, following the Supreme Court, does not require any particular

provision or language in order for an ERISA plan to convey discretionary authority but has

instead been "comparatively liberal in construing language to trigger the more deferential

standard of review under ERISA."  *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263,

1268 (10th Cir. 2002) (citing *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1259 (10th

Cir. 1998), and *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996)).  In

*McGraw*, the Tenth Circuit held that the Plan had conveyed discretionary authority to the administrator by stating, "a service or supply must be ***determined by Prudential*** to meet all of these tests." *McGraw*, 137 F.3d at 1259 (emphasis in original) (internal quotation marks omitted); *see also Lunt v. Metro. Life Ins. Co.*, No. 2:05-cv-784-TC, 2007 WL 1964514, at *6 (D. Utah July 2, 2007) (applying deferential standard of review where the Plan referenced in five places that claims were "approved" by the administrator); *Streeter v. Metro. Life Ins.*, No. 2:04-CV-1190-TS, 2006 WL 2944876, at *1 n. 14 (D. Utah Oct. 13, 2006). Similarly, in *Nance*, the Tenth Circuit found that Plan language requiring the proof of a benefit claim to be satisfactory to the administrator was sufficient to trigger the application of the arbitrary and capricious standard of review. *Nance*, 294 F.3d at 1268.

Under the Plan terms, FCA is the plan administrator, and SOMI is the contract administrator or third party administrator. (SOM 000226 SD.) An Administrative Services Agreement governs SOMI's relationship with FCA. (SOM 000220 & 447-485 SD.) The Plan Document outlines the division of duties between SOMI and FCA in the following ways:

- The Plan Administrator has designated a Contract Administrator for the purposes of evaluating Claims reimbursement under the Plan. (SOM 000203 SD; *see* SOM 000217 SD, identifying SOMI as the contract administrator.)

- The Contract Administrator will decide [the] Claim within a reasonable time. (SOM 000203 SD).

- The Plan Sponsor is responsible for the financing and administration of the Plan. A third party administrator provides claims administration. (SOM 000219 SD.)

- Any interpretation or determination made under discretionary authority to interpret the terms of the Plan and to determine eligibility and entitlement to Plan benefits which shall be given to the Contract Administrator, the Plan

14

> Administrator, and other Plan fiduciaries and individuals to whom responsibility
> for the administration of the Plan has been delegated, will be given full force and
> effect, unless it can be shown that the interpretation or determination was
> arbitrary and capricious.  (SOM 000192 SD, ¶ 2.)[6]

These provisions convey to Duffy and other Plan participants that the evidence of a benefits claim "must be persuasive" to SOMI. *Nance*, 294 F.3d at 1268; *see also Lunt*, 2007 WL 1964514 at *6; *Streeter*, 2006 WL 2944876 at *1.  Therefore, since SOMI has discretionary authority to determine claims under the Plan, the Court should consider SOMI's claim and appeal determinations under the arbitrary and capricious standard of review.[7]  *Id.*

      **B.**    **SOMI does not have the requisite financial interest to give rise to a dual role conflict of interest.**

Duffy contends in his opening brief that SOMI has a conflict of interest.  If an administrator is operating under a conflict of interest, "the conflict must be weighed as a factor in determining whether there is an abuse of discretion."  *Firestone*, 489 U.S. at 115.  Here, however, SOMI does not have a conflict of interest. In *Glenn*, the U.S. Supreme Court discussed dual role conflict of interest as arising in two contexts. First, the Court noted that when an employer both funds the benefits of a Plan *and makes the claim determinations*, "'every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar

---

[6] Duffy uses this paragraph from the Plan Document to assert that SOMI is a fiduciary.  Duffy's interpretation, however, improperly focuses only on the phrase "other Plan fiduciaries" and fails to consider the entirety of the phrase "other Plan fiduciaries **and individuals to whom responsibility for the administration of the Plan has been delegated**."  (Pet'r's Br. 17, emphasis added.)  As discussed below, SOMI is not a fiduciary. *See infra* Fiduciary Duty Argument, p. 28.

[7] Worth noting, even if the *de novo* standard of review were applicable to this case, which Duffy has conceded it is not, the evidence in the administrative record shows that SOMI properly denied coverage based on the opinions of four medical experts.  Therefore, regardless of the standard of review, the Court should enter judgment in favor of SOMI.

in [the employer's] pocket.'"  *Glenn*, 554 U.S. at 112 (quoting *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 144 (3d Cir. 1987), *aff'd in part*, *rev'd in part*, 489 U.S. 101 (1989)). In this situation, the Supreme Court stated that the "employer's fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary." *Id*.  Similarly, the Supreme Court found that a conflict of interest situation arises where an insurance company both determines claims *and pays those claims from its own funds*.  *Id*. at 114-15.  The insurance company, like the self-insured employer in the first situation, would be using its own funds to pay claims.  Thus, the common thread in these conflict of interest situations is that the administrator/payor is using its own funds to pay claims that would be available to it for other purposes but for the payment of the benefits claims.

Duffy's arguments, however, gloss over the difference between paying claims and *funding* the Plan.[8]  In this case, the employer, FCA, funds the Plan.  SOMI, on the other hand, simply makes claims decisions within the confines of the Plan language and uses FCA's funds to pay the claims.  (SOM 000219 SD ("Plan benefits are self-funded and are provided directly from the general assets of the Plan Sponsor.  The Plan Sponsor is responsible for the financing and administration of the Plan. A third party administrator provides claims administration.")).  Moreover, "asserting a conflict based on a generalized economic incentive . . . is insufficient to rise to the level of a cognizable conflict of interest."  *Eugene S. v. Horizon Blue Cross Blue*

---

[8] Citing *McGraw*, 137 F.3d 1259, 1263, Duffy argues, "less deference is afforded to an administrator's denial decision when the denial decision affects the administrator or fiduciary by filling or depleting *its* coffers."  (Pet'r's Br. 29 (emphasis added).)  This may be so, but Duffy ignores the critical distinction between paying and funding claims.  Paying a claim under FCA's Plan does not affect SOMI's coffers.

*Shield of N.J.*, 663 F.3d 1124, 1133 (10th Cir. 2011) (internal citations omitted).  Duffy, without

any evidentiary support, asserts that because SOMI realized it paid out more than FCA's stop

loss deductible, SOMI had a financial incentive to deny Duffy's claims.  This is a speculative,

unfounded assertion based on "generalized economic incentive" because, regardless of whether

SOMI paid out more than FCA's deductible, the funds were not SOMI's and SOMI did not and

could not lose any money of its own as a result.  SOMI's lack of requisite financial motive ends

the conflict of interest analysis; thus, conflict of interest is not a relevant factor in the standard of

review for this case.[9]

## III.   SOMI's denial of Duffy's claims was a result of a reasoned and principled process and was based on substantial evidence.

A claimant bears the burden of proving a claim for benefits.  *See, e.g.*, *McGee v. Equicor-*

*Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992).  Under the arbitrary and capricious

standard of review, the Tenth Circuit has held that:

> '[t]he Administrator['s] decision need not be the only logical one
> nor even the best one.  It need only be sufficiently supported by
> facts within [its] knowledge to counter a claim that it was arbitrary
> or capricious.'

*Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Woolsey v. Marion*

*Laboratories, Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991)).

---

[9] Duffy asserts that the existence of a conflict of interest is per se evidence of an arbitrary and capricious decision. (Pet'r's Br. 29.) This assertion is wholly inaccurate, as precedent treats a conflict of interest only as a factor to be weighed when deciding whether a determination was arbitrary and capricious.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).  Here, however, this otherwise important distinction is a moot point because SOMI has no conflict of interest, and the proper standard of review is therefore "arbitrary and capricious," without any modifications.

A district court will uphold a claim administrator's decision "unless it is 'not grounded on *any* reasonable basis.'"  *Id.* (emphasis in original); *see also Hancock*, 2008 WL 2996723, at *7. When a court reviews a claim decision under the arbitrary and capricious standard of review, it "'need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end.'"  *Id.* (quoting *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)).  The Court's "responsibility lay in determining whether the administrator's actions were arbitrary or capricious, not in determining whether [the claimant] was, in the district court's view, entitled to [] benefits."  *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992); *see also Hancock*, 2008 WL 2996723, at *7.  The Court "will uphold an administrator's decision so long as it is predicated on a reasoned basis." *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (quotation omitted), *cert. denied*, 130 S. Ct. 3356 (2010). An administrator's decision will be deemed reasonable if the administrator based the decision on substantial evidence in the administrative record before it.  Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker."  *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002).  Substantial evidence is "more than a scintilla but less than a preponderance."  *Sandoval*, 967 F.3d at 382.

A.     **SOMI reasonably relied on the opinions of the independent physicians.**

The hallmark of the full and fair review of an ERISA claim is the review of the medical issues by independent medical experts. SOMI's use of unbiased independent medical reviews was a reasoned and principled process to determine whether the Plan terms allowed coverage of

18

Duffy's procedures.  SOMI is entitled to rely on the independent physicians to determine

medical necessity based on Plan language and the law.  (*See* SOM 000204 SD (the Contract

Administrator "may secure independent medical or other advice and require such other evidence

as it deems necessary.")).  As part of its adjudication of Duffy's claim, SOMI referred the file to

three different independent physicians: a board certified orthopedic surgeon (SOM 000043 SD)

and two board certified neurologists (SOM 000098 & 117 SD).[10]  All three independent

physicians decided the procedures were not medically necessary.  (SOM 000043, 98, & 117 SD.)

The number and quality of SOMI's separate medical reviews is indicative of its full and fair

review.

      Courts have rejected attacks on ERISA administrators' acceptance of paper reviews over

the opinions of treating physicians. For example, in *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d

569 (7th Cir.), *cert. denied*, 127 S. Ct. 234 (2006), the Seventh Circuit held that:

> The district court and Davis also fault Unum for relying on a 'mere
> paper review,' lamenting the fact that Unum's doctors did not
> personally examine Davis or speak with his doctors. However,
> neither the district court nor Davis has cited, and our research has
> not disclosed, any authority that generally prohibits the
> commonplace practice of doctors arriving at professional opinions
> after reviewing medical files.  In such file reviews, doctors are
> fully able to evaluate medical information, balance the objective
> data against the subjective opinions of the treating physicians, and
> render an expert opinion without direct consultation. It is
> reasonable, therefore, for an administrator to rely on its doctors'
> assessments of the file and to save the plan the financial burden of
> conducting repetitive tests and examinations.

---

[10] This does not include Bardon/American's independent medical review (Review 1), which was conducted by a
board certified neurologist (SOM 000034).

*Id*. The rationale of the Seventh Circuit in *Davis* applies equally to this case. *See Carberry v. Metro. Life Ins. Co.*, No. 09-cv-02512-DME-BNB, 2011 WL 2887842, at \*5 (D. Colo. July 19, 2011) (finding the petitioner's argument that respondent should have conducted a "face to face" examination failed because there was no requirement that the respondent conduct a "face to face" examination, and upheld the respondent's decision to deny coverage). SOMI's reliance on the file reviews conducted by three well-qualified physicians was proper under the law and the Plan language.[11] (*See* SOM 000204 SD.)

      **1.**    **SOMI properly requested three independent medical reviews, and credited the independent medical reviewers over Dr. Schneider's opinion.[12]**

The Tenth Circuit has held that "it is not [the court's] role to weigh or evaluate the medical evidence in the record." *Williams v. Metro. Life Ins. Co.*, 459 F. App'x 719, 726 n. 4 (10th Cir. 2012) (unpublished). ERISA claim administrators have the "job of weighing valid conflicting professional medical opinions." *Id.* (quoting *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 401 (5th Cir. 2007). An ERISA administrator is not obligated to credit the statements of a treating physician over the expert medical opinion of an independent physician

---

[11] Duffy makes conflicting claims that SOMI should have performed further investigation while also accusing SOMI of "attempting to dig up new evidence until it found just the right support for its decision to deny an employee benefits." (Pet'r's Br. 24, 32.) SOMI and Bardon/American attempted to perform further investigations, but Dr. Schneider thwarted their efforts. SOMI and Bardon/American offered Dr. Schneider the opportunity to consult with the independent medical reviewer and allowed Dr. Schneider numerous opportunities to provide additional information to support a finding that the procedures were medically necessary. (SOM 000037 SD.) Dr. Schneider's refusals cannot be characterized as SOMI's failure to investigate the procedures. Likewise, SOMI's further requests for documents and explanations were attempts to appeal Bardon/American's decision in support of Duffy and to complete its separate medical necessity determination, not to create reasons for denial. (SOM 000037 & 179 SD.)

[12] This reference to three independent medical reviews includes only those independent medical reviews requested by SOMI and excludes Bardon/American's initial independent medical review.

consultant.  *See, e.g.*, *Eugene S.*, 663 F.3d at 1135 (10th Cir. 2011); *Chalker v. Raytheon Co.*,

291 F. App'x 138, 144 (10th Cir. Aug. 19, 2008) (unpublished); *Meraou v. Williams Co. Long*

*Term Disability Plan*, 221 F. App'x 696, 702-03 (10th Cir. 2007) (unpublished); *Buckhardt v.*

*Albertson's, Inc.*, 221 F. App'x 730, 737 (10th Cir. 2007) (unpublished); *Sandoval*, 967 F.2d at

382; *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Duffy asserts, "SOMI requested Dr. Schneider's narrative, but never considered it."

(Pet'r's Br. 31.)  The fact is that Dr. Schneider refused to provide a narrative upon SOMI's first

request, and instead wrote a letter in which he refused to provide additional documentation,

threatened litigation, and accused the independent medical reviewers of bias.  (SOM 000039-40.)

Upon initiating the first appeal, on March 6, 2012, Dr. Schneider provided a narrative that

discussed Duffy's preoperative studies, intraoperative findings, and conservative care.  (SOM

000052-53 SD).  The physician in Review 4 considered and discussed Dr. Schneider's narrative

by identifying inconsistencies between Dr. Schneider's explanation of medical necessity and

Duffy's images.  (SOM 000174 SD.)

Furthermore, SOMI is not required to credit Dr. Schneider's narrative over that of

independent medical reviewers.  *Williams*, 459 F. App'x at 728 (in weighing the opinions of

reviewing and treating physicians, an ERISA administrator may "compare the possible biases of

the reviewing physicians against [the treating physician's] possible bias.").  Duffy's treating

physicians, of course, not only received compensation for their treatment of Duffy, but also have

a personal relationship with Duffy as their patient, which can taint their opinions.  The Tenth

Circuit has noted that "when an examining physician is also a treating physician, the physician

may feel sympathy for her patient."  *Id.* at 726.  Consequently, the Tenth Circuit recognized that "in some cases, reviewing physicians 'might have the advantages of both impartiality and expertise.'"  *Id.* (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)); *see also Merriam*, 2010 WL 4054177, at *10 (finding that the claimant's treating physician had "become an advocate for her patient").  The evidence in the administrative record supports the conclusion that Duffy's treating physician became an advocate for Duffy after SOMI's denial of Duffy's claim.

SOMI reasonably gave more credit to the three opinions of the impartial reviewing physicians than the statements of Duffy's treating physician.  The statements of Dr. Schneider both raised questions about his credibility and supported the view of him as having become a patient advocate instead of an objective commentator on the medical evidence. For example, Dr. Schneider suggested that Duffy consult an attorney to file suit against FCA and file a medical malpractice suit against the independent reviewers, and stated to SOMI, "We look forward to assisting Mr. Duffy in his pursuit and adjudication of justice."  (SOM 000039-40 SD.)  In addition, Dr. Schneider and Duffy are co-parties in this case.  It is clear that Dr. Schneider has a stake in this litigation, his opinion is subject to bias, and he is Duffy's advocate. Consequently, SOMI's reliance on the independent medical reviews was reasonable because those reports were "detailed, unequivocal, and responsive" to the opinion of Duffy's physician. *Williams*, 459 F. App'x at 727.

**B.     The three SOMI-retained medical reviews properly applied the definition of medical necessity to determine coverage.**

SOMI did not simply rely on Bardon/American's determination of medical necessity. Instead, SOMI offered to appeal Bardon/American's decision.  (SOM 000037 SD.)  Once Dr. Schneider refused to participate in a phone consultation or present further evidence, SOMI sent the file out for a review independent of Bardon/American's determination.  (SOM 000043 SD.) Indeed, subsequent to Bardon/American's review, SOMI requested three separate medical opinions.  All the independent reviews requested by SOMI determined the procedures were not medically necessary.  (SOM 000043, 402 & 107 SD.)  Additionally, all but one of the reviews requested by SOMI included the Plan language in the list of materials reviewed.  (SOM 000043, 92, &170).  In his opening brief, Duffy argued, without any supporting evidence and without an alternate definition of medical necessity, that the independent reviewers applied a definition of medical necessity that conflicted with the one contained in the Plan.

The Plan defines procedures as medically necessary when they:

> (a) are appropriate and consistent with the diagnosis or treatment of the Illness, and (b) are customarily and reasonably recognized as appropriate throughout the Physician's profession, and (c) could not have been omitted without adversely affecting the patient's condition or the quality of medical care rendered, and (d) are not solely for the convenience of a Covered Person, Physician, Hospital or other provider.

All of the independent reviewers provided detailed reports with full discussions of the medical evidence in line with the Plan's definition of medical necessity.  *See supra* Statement of Facts, discussion of medical reviews, pp. 5-10.  Duffy's claim was ultimately denied because: (1) the MRI was not consistent with the physical finding, as the MRI showed severe nerve root canal

stenosis on the *right*, but the physical finding showed decreased strength in the *left* biceps and triceps; (2) the patient did not demonstrate significant radiculopathy; (3) the MRI did not demonstrate significant instability; and (4) Dr. Schneider's letter from February 17, 2012 stated the surgery was necessary because the preoperative image showed discogenic deterioration at C5-6 and C6-7, as well as LF-S1 on the lower spine; but the image showed disc influence at C6-7 and on the right, not the left.  (SOM 000174 SD.)

These reasons for denial are consistent with the Plan definition of medical necessity.  The independent reviewers used their education, experience, expertise and objectivity, and consulted 36 peer reviewed articles to determine the procedures were not appropriate and not consistent with the diagnosis or treatment.  (SOM 000031-35, 43-45, 92-99, & 170-178 SD).  They also determined that the procedures were not consistent with the diagnosis by reviewing the images, medical reports, and Duffy's physical symptoms.  (SOM 000031, 43, 92, & 170-171 SD).  The reviewers determined Dr. Schneider should have performed a discogram to locate the origin of the pain and should have run further tests to determine why Duffy's pain was on his left, when the damage to his spine was on the right.  (SOM 000032-33 & 174 SD).  The concerns regarding an appropriate diagnosis were further compounded by the fact that Dr. Schneider incorrectly described Duffy's images when providing the rationale for Duffy's surgery.  (SOM 000174 SD).

SOMI's decision is supported by substantial evidence, including the Plan's definition of medical necessity and the four independent medical review determinations, three of which were requested by SOMI, that the procedures were not medically necessary.

**C.    SOMI's review did not create a moving target or cherry pick the reasons for denying coverage.**

SOMI fully evaluated Duffy's claims and made a decision based on three consistent SOMI-retained independent medical reviews.  Duffy accuses SOMI of creating a moving target through its evaluations.  (Pet'r's Br. 31.)  SOMI did not create a moving target, but instead enhanced its reviews based on the increased documentation received from Dr. Schneider.  For example, Review 3 cited lack of conservative care as one of several reasons for lack of medical necessity.  (SOM 000092-99 SD.)  But Review 4 properly corrected the lack of conservative care determination in response to Duffy supplementing the medical documentation with his chiropractic history during his appeal.  (SOM 000111-169 SD.)  Duffy's appeal, however, did not adequately address the other reasons the reviewers concluded the procedures were not medically necessary—failure to identify pain generators, lack of instability in the spine, lack of radiculopathy, and inconsistency between the physical exam and the MRI.  The reviews consistently raised these issues, demonstrating that SOMI did not create a "moving target" as claimed by Duffy.  (Pet'r's Br. 31.)

Additionally, Duffy's opening brief inaccurately describes the medical reviews in an attempt to discredit SOMI's reliance on the opinions of the independent medical experts.  For example, Duffy asserts that AllMed (Review 2) determined the procedures were unnecessary based on lack of evidence of spondylosis, "but after records showing spondylosis were provided, lack of medical necessity was found on other grounds."  (Pet'r's Br. 31.)  It is clear from the record that the AllMed reviewer analyzed spondylosis because he/she stated "an MRI of the

lumbosacral spine showed spondylosis." (SOM 000044 SD.)  AllMed's rationale for lack of

medical necessity, however, never mentioned spondylosis:

> The medical reports submitted for review showed no evidence of
> any instability of the spine in either the cervical or lumbosacral
> region. While there were some slight reflex changes in the cervical
> area, no other objective tests produced positive results. Except for
> some loss of motion, all of the tests in the lumbosacral region were
> normal. Without evidence of instability, myelopathy, a fracture, a
> tumor, spondylolisthesis, or marked decreasing function, the
> procedures cannot be deemed medically necessary.  The statement
> that the symptoms of the lumbosacral spine were relieved by
> massage in the 4/8/11 note further supports the determination that
> the procedures were not medically necessary.

The review does mention spondylolisthesis, a separate spinal disorder, along with other

symptoms that would justify medical necessity.  (*Id.*)  But at the end of the day, AllMed's

decision was not based solely or even in part on spondylosis.  (*Id.*)  SOMI did not create a

moving target; its process was reliable and consistent, as were the multiple reasons cited by the

independent reviewers for denying coverage.

**IV.    Duffy's arguments about prejudgment interest and legal fees are premature.**

Duffy concludes his brief with short arguments relating to his claims for the award of

legal fees.  (Pet'r's Br. 34.)  The award of legal fees to the prevailing party in an ERISA case is a

matter for the Court's discretion.  The consideration of these issues properly belongs in the

context of post-judgment proceedings after the Court's ruling on the merits.  SOMI has shown in

this brief that the Court should enter judgment for it, and Duffy thus would not be entitled to

seek recovery of prejudgment interest or legal fees.  In any event, the Court should defer any

ruling on these issues until after the entry of judgment.

**V.    Duffy's alternative claim for breach of fiduciary duty must be dismissed, because Duffy has a claim for benefits available to him under 29 U.S.C. § 1132(a)(1)(b) and SOMI is not a fiduciary.**

Duffy's objective in this litigation is to obtain benefits allegedly due to him under the Plan.  The ERISA remedial provision relating to the recovery of benefits is 29 U.S.C. § 1132(a)(1)(B), and Duffy based his second claim for relief on that section of ERISA.  (Am. Compl., 11, ¶ 46.)  But Duffy also asserted an equitable claim for breach of fiduciary duty based on 29 U.S.C. § 1132(a)(3).  (Am. Compl., 11, ¶ 52.)  Under ERISA and controlling Tenth Circuit authority, Duffy is precluded from bringing a fiduciary claim where his real claim is for payment of benefits.

With regard to fiduciary duty claims, the U.S. Supreme Court has held that "where Congress elsewhere provide[s] adequate relief for a [participant's] injury, there will likely be no need for further equitable relief, [and] such relief normally would not be 'appropriate.'"  *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).  Accordingly, the Tenth Circuit has held that "consideration of a claim under 29 U.S.C. § 1132(a)(3) is improper when the [claimant], as here, states a cognizable claim under 29 U.S.C. § 1132(a)(1)(B), a provision which provides adequate relief for [the] alleged … injury."  *Lefler v. United HealthCare of Utah, Inc.*, 72 Fed. App'x 818, 826 (10th Cir. Aug. 14, 2003) (unpublished); *Moore v. Berg Enterprises, Inc.*, 201 F.3d 448 (Table), 1999 WL 1063823 at * 2 n. 2 (Nov. 23, 1999) (unpublished).  On this basis, this Court and other district courts of the Tenth Circuit have dismissed alternative breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(3) where the participant had a remedy under 29 U.S.C. § 1132(a)(1)(B).  *Jones v. Am. Airlines, Inc.*, 57 F. Supp.2d 1224, 1237 (D. Wyo. 1999); *see also*

27

*Huynh v. Liberty Life Assur. Co. of Boston*, No. CIV-10-276-JCH/RHS, 2011 WL 2340800 at

*5-6 (D.N.M. Mar. 23, 2011); *Benson v. Prudential Fin., Inc.*, No. CIV-07-587-JB/ACT, 2007

WL 4334026 at *6-9 (D.N.M. Aug. 17, 2007); *Swearingen v. Honeywell, Inc*., 189 F. Supp.2d

1189, 1197-98 (D. Kan. 2002); *Klover*, 64 F. Supp.2d 1003, 1012-13; *Mein v. Pool Co. Disabled*

*Int'l Emp.Long Term Disability Benefit Plan*, 989 F. Supp. 1337, 1350-51 (D. Colo. 1998).

Since Duffy has asserted a claim for relief under 29 U.S.C. § 1132(a)(1)(B), Duffy's claim for

breach of fiduciary duty based on 29 U.S.C. § 1132(a)(3) must be dismissed.  *Id.*

Notably, even if an alternate fiduciary duty claim were allowed in this case, SOMI is not

a fiduciary and cannot be liable to Duffy for a breach of fiduciary duty.  A person or entity can

become a fiduciary of an ERISA plan in the following three ways:  (1) by being named as a

fiduciary in the written plan instrument; (2) by being named and identified as a fiduciary

pursuant to a procedure in the written plan instrument; or (3) by meeting the definition of a

fiduciary as set forth in ERISA, which includes "exercis[ing] any discretionary authority or

discretionary control respecting management of [the] plan or exercis[ing] any authority or

control respecting management or disposition of its assets." 29 U.S.C. §§ 1102(a)(1), 1102(a)(2),

1002(21).  The Plan Document names FCA (and not SOMI) as Fiduciary, Plan Sponsor, and Plan

Administrator.  SOMI provides only administrative services to FCA under the Plan or performs

other functions as delegated by FCA, while FCA pays benefits under the Plan from its own

assets.  SOMI does not exercise any discretion, control, or authority with respect to the

management, investment, disposition, and utilization of Plan assets.

28

## VI.   SOMI's clarification of the record.

### A.      Pre-authorization

The pre-procedure events are largely irrelevant to the sole question presented on this appeal:  whether SOMI's decision to deny coverage was arbitrary and capricious. SOMI, however, believes that some of the pre-procedure facts were misrepresented and would like to clarify the record relating to pre-authorization.

Procedures that require overnight hospital stays are considered "pre-service claims" under the Plan, which require pre-admission notification and approval in advance of obtaining medical care.  (SOM 000201 SD.)  Unlike a pre-service claim, the Plan does not require precertification for outpatient surgery.  (*Id.* (defining pre-service claim)).  Prior to surgery, Dr. Schneider deemed Duffy's procedure out-patient.  (*See* SOM 000293 SD.)  Becky, Dr. Schneider's representative, called SOMI and asked, "to pre-auth an outpatient surgery" and to determine patient eligibility for benefits.  (SOM 000293 SD.)  The recording at the beginning of the call stated that any estimates provided shall not be interpreted as guarantee of payment, and coverage determinations remain subject to all Plan provisions.  (*Id.*)  SOMI's representative provided Duffy's effective dates of coverage, his deductibles for in- and out-of-network, and stated, "We do not require any pre-cert for out-patient procedures."  (*Id.*)  Becky verified that no pre-authorization is given for outpatient procedures when she repeated back to the SOMI representative, "so no pre-auth for outpatient procedures?" and the SOMI representative stated, "That is correct."  (*Id.*)  Dr. Schneider or his representatives did not notify SOMI that Duffy would be hospitalized overnight, nor did they provide the necessary information for a pre-service

29

claim.[13]  SOMI was not required to and did not follow the pre-admission hospital notification

protocol.

Even if Mr. Duffy's surgery unexpectedly became an in-patient confinement, which may

have converted it to an Urgent Care Claim under the Plan, SOMI could not have authorized

Duffy's operations because the pre-authorization process was not followed.  (SOM 000201-203

SD.)  The Plan required Dr. Schneider or Duffy to call American Health Data Institute within 48

hours after the start of confinement and provide the same information required for a pre-

admission notification.  (*Id.*)  Neither Dr. Schneider nor Duffy provided the information or

notified American Health Data Institute.  As such, SOMI did not provide any pre-authorization

for Duffy's procedures to Duffy or to Dr. Schneider. However, the failure of Duffy and Dr.

Schneider to follow SOMI's authorization process is not the basis for the denial of the benefits;

thus, it is irrelevant to the issue of whether SOMI's determination was arbitrary and capricious.

**B.     Miscellaneous rebuttals**

For the purposes of efficiency and the Court's convenience, SOMI offers the following

rebuttals and clarifications to Duffy's statements in chart form:

| | |
|---|---|
| Duffy asserts the Administrative Record shows that MRIoA never listed the Plan as a document considered in reviewing the claims (in reference to definition of medical necessity). (Pet'r's Br. 22.) | Reviewer 4 reviewed Duffy's complete file on May 24, 2012. The review lists "plan language" in records received. (SOM 000170 SD.) |

---

[13] Further, the Plan requires specific information on pre-service claims, which was not provided to the SOMI representative: employee's name, group number, identification number, patient's name, dates of expected confinement, and the name, address, and phone number of facility.

| | |
|---|---|
| Duffy asserts the Plan language was "ignored" by the independent reviewers making a determination based on their "own references" not based on the Plan because the independent medical reviewers said they made their decision "based on clinical information and using evidence-based, peer-reviewed guidelines." (Pet'r's. Br. 22.) | To meet the Plan's definition of medical necessity a procedure must be "customarily and reasonably recognized as appropriate throughout the Physician's profession."  (SOM 000229 SD.) Independent medical reviewers use peer reviewed references to determine what is customarily and reasonably recognized as appropriate throughout the Physician's profession.<br><br>Additionally, Duffy assumes, without providing any supporting evidence, that the independent reviewers applied a definition of medical necessity that conflicted with the one contained in the Plan. |
| Duffy asserts that SOMI unreasonably narrowed the scope of medical necessity "by adding the requirement that claims are decided to be medically necessary only if Excess Carrier decides, in its discretion, that the claim is medically indicated." (Pet'r's. Br. 23.) | SOMI completed three independent medical reviews separate from Bardon/American's determination, offered to appeal Bardon/American's determination on Duffy's behalf, and allowed Dr. Schneider an "unofficial" appeal outside the Plan terms.  SOMI did not simply rely on Bardon/American's initial determination. |
| Duffy asserts that the Plan's definition of medically necessity was narrowed by adding a time requirement to MRIoA's review.  (Pet'r's. Br. 24.) | Review 3 was the only review where a less-than-standard turnaround time was requested from the independent medical reviewer.  (SOM 000399 SD.) Further, the Plan allows for use of independent medical reviews, without determining a time for review. SOMI's actions were not contrary to the definition of medical necessity or the Plan language. (*See* SOM 000204 SD.) |
| Duffy asserts that Dr. Maycock's letter was not considered in the determination of medical necessity (Pet'r's Br. 27) and claims Dr. Maycock's opinion was not given any credence in SOMI's review.  (Pet'r's Br. 28.) | Pursuant to the discussion above regarding the ability of an administrator to weigh bias, SOMI was not required to give credence to Dr. Maycock's opinion. However, the letter from Dr. Maycock was reviewed and considered by MRIoA.  (*See* SOM 000092 & 170 SD.)  And the independent reviewers reviewed all chiropractic notes from 1991 to post-surgery. (SOM 000170-178 SD.) |

31

| | |
|---|---|
| Duffy asserts that SOMI failed to acknowledge all the evidence when it said, "there does not appear documentation of pain generators being identified and treated for the lumbar spine prior to going to surgery." (Pet'r's Br. 27.) | "Pain" and "pain generator" are not synonymous. A pain generator is a location, level, or disc that is identified by a discogram. (SOM 000033 SD; SOM 000095 SD; SOM 000097 SD.) It refers to the process of determining the origin of the pain, not whether Duffy actually experienced pain (which is not in dispute). |
| Duffy asserts that MRIoA made a mistake by finding that "the medical records did not demonstrate *significant* radiculopathy or functional deficits in the lower extremities." (Pet'r's. Br. 28.) | In fact, MRIoA did not disregard Dr. Schneider's case notes or opinions. MRIoA's determination is in line with Dr. Schneider's opinion because his narrative only identifies *mild* radiculopathy. (SOM 000052 SD.) The April 8, 2011 case note referred to by Duffy was considered in all four medical reviews. (*See* SOM 000031, 43, 92, & 170 SD.) |
| Duffy asserts that MRIoA should have considered a reviewer outside the MRIoA system. (Pet'r's Br. 28.) | There is no support for this assertion, and it makes little sense to claim that an independent reviewer must consult outside its own agency when the sole purpose of using independent reviewers is to receive an unbiased objective determination. Moreover, AllMed reviewed Duffy's claim separate from MRIoA and also determined the procedures were not medically necessary. |

## VII.   Conclusion

A claim under ERISA allows Duffy to recover benefits only from the entity responsible for funding those benefits.  29 U.S.C. § 1132(a)(1)(B).  Duffy has no basis for asserting a claim for benefits against SOMI as a third party administrator with no responsibility for funding the Plan.  Thus, Duffy's claim for benefits against SOMI must be dismissed.

Nevertheless, a district court will uphold a claim administrator's decision "unless it is 'not grounded on *any* reasonable basis.'"  *Kimber*, 196 F.3d at 1098 (emphasis in original).  The issue before the Court is not whether Duffy was in pain or required medical treatment of some

kind; those issues are not in dispute. Instead the Court must address whether SOMI's decision that Dr. Schneider's procedures were not medically necessary was arbitrary and capricious.

Four board certified surgeons determined the procedures Dr. Schneider performed were not medically necessary.  Specifically, after evaluating Duffy's file, consulting peer reviewed articles, and applying their knowledge and expertise, the independent reviewers concluded the procedures did not correlate with the diagnosis and were not customarily and reasonably recognized as appropriate in the profession.  These four reviews provide a "reasonable basis" for SOMI's determination that the procedures were not medically necessary under the Plan.

SOMI's determination was not arbitrary and capricious; indeed, under the circumstances, any decision to the contrary would have been arbitrary and capricious.  Therefore, the Court should uphold SOMI's decision to deny coverage.

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)**

In accordance with Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned certifies that this brief complies with the type volume limitation set forth in Rule 32(a)(7)(B), and that this brief, (exclusive of the items listed in Rule 32(a)(7)(B)(iii), contains 9,486 words relying on the Word software word counting feature on the undersigned's computer.

DATED:  May 29, 2013.

/s/ Joanna R. Vilos

Bradley T. Cave, P.C.
Joanna R. Vilos
Holland & Hart LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone:  (307) 778-4200
Facsimile:  (307) 778-8175
bcave@hollandhart.com
jvilos@hollandhart.com

ATTORNEYS FOR DEFENDANT SHEFFIELD,
OLSON & McQUEEN, INC.

### CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2013, I served a true and correct copy of the foregoing

by CM-ECF addressed to the following:

Jeffrey J. Gonda
Angela C. Long
Lonabaugh & Riggs, LLP
50 E. Loucks Street, Ste. 110
P.O. Drawer 5059
Sheridan, WY 82801
jeff@lonabaugh.com
angie@lonabaugh.com

James L. Edwards
Paul S. Phillips
P. O. Box 1148
Gillette, WY 82717
jim@vcn.com
paul.phillips@vcn.com

James C. Worthen
Andrew F. Sears
Murane & Bostwick, LLC
201 North Wolcott
Casper, WY 82601
jcw@murane.com
asears@murane.com

/s/ Joanna R. Vilos

6199830_2.DOCX

36